FILED - LN
September 22, 2008 3:59 PM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: /

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION & ADVOCACY
SERVICE, INC.,

Plaintiff,

v

GARY ROSEMA, in his official capacity
as the SHERIFF OF OTTAWA COUNTY
                                    Defendant.

CASE NO.:

HON.

1:08-cv-888
Gordon J Quist
US District Judge

COMPLAINT

MICHIGAN PROTECTION & ADVOCACY
SERVICE, INC.
By: Gabrielle S. Frampton (P59499)
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755

## INTRODUCTION

Plaintiff, **Michigan Protection and Advocacy Service, Inc.**, (hereinafter "MPAS") seeks entry of an Order enjoining the Defendant, **Sheriff Gary Rosema,** and requiring him to provide access to medical, mental health and other records required by the Protection and Advocacy for Individuals with Mental Illness Act (hereinafter "PAIMI" Act) 42 U.S.C. §§10801-10827. MPAS also seeks an Order requiring Defendant to pay MPAS all associated fees and expenses incurred by bringing this action.

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court under 28 U.S.C. §1331 because Plaintiff seeks to enforce a right created by federal law and this case raises a federal question.

2. Venue is proper in this district because Defendant resides in this district and because the

cause of action arose in this district.

## PARTIES

4. Plaintiff, Michigan Protection and Advocacy Service, Inc. (MPAS):

    a. MPAS is the Michigan entity designated by the Governor to implement the federal protection and advocacy (P&A) statutes enacted to protect the rights of people with disabilities. The relevant federal statute in this matter is the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI"), 42 U.S.C. § 10801 *et seq.*.

    b. PAIMI empowers MPAS to pursue legal, administrative, and other remedies in its own name as a party to vindicate the rights of its constituents. 42 U.S.C. §10805(a) (1) (B).

    c. A core component of MPAS' federal mandate is the discovery and prevention of abuse and neglect affecting individuals with mental illness. MPAS is authorized and required to investigate suspected incidents of abuse and neglect, especially when that abuse and/or neglect results in death.

    d. To enable MPAS to carry out its investigative function, PAIMI provides MPAS access to the records of facilities rendering care and treatment to persons with mental illness. *See* 42 U.S.C. § 10805(a)(1)(A), 42 CFR § 51.41(b)(2).

    e. Any records obtained by MPAS thorough its access authority are subject to the same federal and state confidentiality regulations that are applicable to providers of mental health services. *See* 42 U.S.C. § 10806.

3. Defendant Gary Rosema is the duly elected Sheriff of Ottawa County, currently serving in that capacity and is sued here in his official capacity.

## BACKGROUND

4. PAIMI, in furtherance of MPAS' investigative function, authorizes access to records to investigate suspected incidents of abuse, neglect and civil rights violations from facilities rendering care and treatment to persons with mental illness, *See* 42 U.S.C. §§ 10805(a)(1)(B) and 10806(b)(3)(A).

5. Thus, MPAS can access the records of any individual who has died who "(c) with respect to

whom a complaint has been received by the system . . . [and] . . . there is probable cause to believe that such individual has been subject to abuse or neglect. *See* 42 U.S.C. § 10805(a)(4)(B).

6. Under PAIMI, *"probable cause"* means reasonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect. 42 CFR § 51.2.

7. Under PAIMI, a *"Facility"* includes any public or private residential setting that provides overnight care accompanied by treatment services. Facilities include, but are not limited to the following: general and psychiatric hospitals, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and **jails and prisons**, including all general areas as well as special mental health or forensic units. (Emphasis added) 42 CFR § 51.2.

8. 42 CFR § 51.41 delineates a facility's responsibility when it receives a request for records under PAIMI. Specifically 42 CFR §51.41 provides:

   (a) Access to records **shall be extended promptly** to all authorized agents of a P&A system.
   (b) A **P&A system shall have access to the records of any of the following** individuals with mental illness:
   (2) An individual, including an **individual who has died** . . . and . . .
   (iii) A **complaint** or report has been received and the **P&A system has determined that there is probable cause** to believe that the individual has been or may be subject to abuse or neglect. (Emphasis added)

## FACTUAL ALLEGATIONS

9. Gary Rosema, as the Ottawa County Sheriff, operates the Ottawa County Jail.

10. The Ottawa County Jail is a "facility" rendering care and treatment to persons with mental

3

illness and is subject to MPAS' access authority under PAIMI. *See* 42 U.S.C. § 10802(3).

11. On or around November 13, 2007, **J.H.K.**, an inmate of the Ottawa County Jail, hung himself in his holding cell with a telephone cord on the first day of a three day sentence for a misdemeanor fireworks conviction.

12. On November 15, 2007, J.H.K. died as a result of those injuries.

13. In May 2008, MPAS received a complaint alleging that J.H.K.'s death resulted from abuse and/or neglect while he was in the care and custody of the Ottawa County Jail.

14. Based on the substance of the complaint, MPAS initiated its investigation into the death of J.H.K.

15. From the initial investigation, MPAS determined J.H.K. had a mental illness at the time of his death and reasonable grounds existed to believe that his death resulted from abuse and/or neglect. MPAS determined it had probable cause warranting further investigation into the death of J.H.K. 42 CFR §51.2.

16. On May 29, 2008, MPAS, via the Freedom of Information Act ("FOIA"), requested the names of all inmates who died while in the Ottawa County Jail's custody in 2007.

17. On June 23, 2008, defendant identified that J.H.K. died as a result of a suicide.

18. On May 29, 2008, MPAS requested defendant provide the following policies via FOIA:
    - Jail policies on suicide prevention;
    - Jail policies on documentation of mental health issues/suicidal tendencies;
    - Jail policies regarding coordination of mental health services to inmates through the county community mental health agency; and
    - Jail policies regarding emergency healthcare/treatment to inmates.

19. On June 23, 2008, in response to MPAS' FOIA request for suicide prevention and mental health care treatment policies, Defendant wrote:

    To the extent such policies, procedures and protocols may be the record of

4

> Ottawa County and/or the Ottawa County Mental Health Agency and may be construed as "public records," that are exempt from disclosure pursuant to Section 13(l)(c) as information the release of which would prejudice the Ottawa County Sheriff's Offices ability to maintain the physical security of the Ottawa County Adult Correctional Facility, and we are unable to identify and (sic) public interest in disclosure in this instance which outweighs the public interest in non-disclosure.

20. On July 9, 2008, MPAS, asserting its authority under PAIMI, requested "**All** records pertaining to [J.H.K.] in 2007 to the date of his death . . . [on 11/15/07]" from Defendant.

21. On July 17, 2008, MPAS, asserting its authority under PAIMI, requested all policies related to suicide prevention and mental health treatment of inmates in the care and custody of the Ottawa County Jail.

22. Defendant's response to MPAS' request for J.H.K.'s records and identified policies wrote, on July 15, 2008 and July 25, 2008 respectively:

    > 1. We are unaware of any statutory or contractual basis under which your agency is authorized to investigate the Ottawa County Adult Correctional Facility, or any other correctional facility operated by a Michigan Sheriff.
    >
    > 2. We know of no factual basis for believing that . . . [J.H.K.] . . . is a person who falls within any of the statutory criteria you have cited, nor have you explained those statutes might apply in this instance.
    >
    > 3. With regard to your claim that you have "probable cause" to believe that Mr. K[omitted] was subject to "abuse or neglect" while at the Ottawa County Correctional Facility, your letter merely makes an assertion with absolutely no supporting facts.

23. On September 4, 2008, MPAS counsel wrote to defense counsel specifically addressing each of the above-stated concerns and provided specific citations to the relevant statutes, regulations and caselaw. To date, Defendant has neither contacted MPAS concerning the requested information nor provided the requested information.

24. Despite the inordinate amount of patience MPAS has shown, Defendant refuses to provide the requested information. Defendant's actions have frustrated MPAS' investigation into the

death of J.H.K. and MPAS' ability to identify conditions of abuse and/or neglect, if any, occurring at the Ottawa County Jail.

### Count I – For Declaratory and Injunctive Relief

25. Plaintiff incorporates each of its allegations as if restated here in full.

26. Under 42 U.S.C. § 10805(a)(1)(B), MPAS may pursue legal remedies to ensure the protection of individuals with mental illness, including, *inter alia,* obtaining entry of an order compelling defendant to provide access to the requested records and policies.

27. Under 42 U.S.C. § 1983, MPAS can bring this action for injunctive relief against Sheriff Rosema, who has, acting under color of law, deprived MPAS of its rights under federal law and the Constitution.

28. MPAS is entitled to a declaration stating that it is entitled to the records and policies requested and to entry of an Order permanently enjoining Defendant and compelling it to provide access to the same.

29. Additionally, under 42 U.S.C. § 1988, MPAS is entitled to recover its costs and reasonable attorney fees incurred in this action.

**WHEREFORE**, MPAS respectfully requests entry of an Order

  A. Declaring that MPAS is entitled to access the records and policies it seeks;

  B. Permanently enjoining Defendant Gary Rosema and compelling him to provide access to the following records: Any and all records pertaining to J.H.K., male, date of death November 15, 2007, from the time J.H.K. was taken into the care and custody of the Ottawa County Adult Correctional Facility to present. This includes but is not limited to:

- Jail logs pertaining to J.H.K.;
- Video tape of J.H.K.;

- Incident reports related to J.H.K.;
- Medication logs for J.H.K.;
- Documentation on use of taser, restraint chair, other restraints and/or administrative segregation with J.H.K.;
- Kites or "requests" for medical or psychiatric services submitted by J.H.K.;
- Any and all mental health assessments, reports, memoranda, notes, etc. by any employee or agent of Defendant or the Ottawa County Community Mental Health Agency;
- Complete death investigation, including investigative report, photographs and copy of notice provided to the State Jail administrator;
- Any other records in the Defendant's possession related to J.H.K.;
- All polices concerning suicide prevention, mental health treatment and training of its employees and/or agents on suicide prevention and mental heath issues;
- Names of all employees and/or agents who had any contact with J.H.K. while he was in the Defendant's care and custody;
- Provide MPAS an opportunity to interview all identified employees and/or agents at a reasonable time during said employee/agent's regularly scheduled work period;
- Should identified employee/agent no longer be employed by Defendant, defendant shall provide all contact information for said employee/agent within his control.

C. Require Defendant to pay to MPAS the reasonable attorney fees and costs incurred in obtaining this relief;

D. Any other relief as this court deems just.

Respectfully submitted,

Michigan Protection and Advocacy Service, Inc.

Dated: September 22, 2008

By: Gabrielle S. Frampton (P59499)
Attorney for Plaintiff
4095 Legacy Parkway; Suite 500
Lansing, MI 48911
(517) 487-1755 (Voice and TTY)
(800) 288-5923 (toll free)
(517) 487-0827 (fax)