UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHIGAN PROTECTION            Hon. Gordon J. Quist
ADVOCACY SERVICE, INC.,

                                       Case No:   1:08-cv-888

             Plaintiff

v

GARY ROSEMA, in his official capacity
as the SHERIFF OF OTTAWA COUNTY,

             Defendant.
_____

**BRIEF IN SUPPORT OF MOTION
MOTION FOR SUMMARY JUDGMENT**

**Oral Argument Requested**

                                       **SILVER & VAN ESSEN, P.C.**
                                       Attorneys for Sheriff Rosema
                                       Douglas W. Van Essen
                                       dwv@silvervanessen.com

                                       **BUSINESS ADDRESS & TELEPHONE**
                                             116 Ottawa Avenue N.W.
                                             Grand Rapids, MI  49503
                                             (616) 988-5600

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| Table of Contents……………………………………………………………… | 1 |
| Table of Authorities…………………………………………………………… | 2 |
| Statement of Facts …………………………………………………………… | 3 |
| Legal Standard………………………………………………………………… | 4 |
| Statement of Question Presented…………………………………………… | 4 |
| Argument……………………………………………………………………… | 4 |

# TABLE OF AUTHORITIES

**Cases:**                                                                                                        Page

*Harmon Indus., Inc. v. Browner,* 191 F.3d 894, 899 (8th Cir.1999)..............6

*Friedman v. U.S.,* 927 F.2d 259 (6th Cir. 1991)............................................4

*Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir.1982).....4

*Office of Protective and Advocacy for Persons with Disabilities v. Armstrong,*

    266 F.Supp. 2d 303 (2003).........................................................9

*United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241-42 (1989)............6

**Statutes and Rules:**

42 U.S.C. §10801 et seq. ................................................................................3

42 CFR 51.41(b).........................................................................................3, 5—9

MCL §600.2936.................................................................................................9

# STATEMENT OF FACTS

Plaintiff, Michigan Protection and Advocacy Service ("MPAS") claims to be a creature of federal statute and regulations drawing all of its authority therefrom, particularly the "Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI"), 42 U.S.C. §10801 et seq. Complaint, ¶4. The specific legal authority through which MPAS claims a right to engage in an investigation in the present situation is 42 CFR 51.41(b)((2). Complaint, ¶4(d). The specific factual authority through which MPAS claims a right to investigate and to have access pertains to the suicide of John Howard Ketchapaw, identified in the Complaint as "JHK," and confirmed by Plaintiff's counsel during the Rule 16 conference to be Mr. Ketchapaw, who committed suicide in the Ottawa County Jail on the first day of a three day sentence for misdemeanor fireworks conviction on November 13, 2007. Complaint, ¶11-¶12. See Affidavit of Douglas W. Van Essen, ¶5.

Mr. Ketchapaw's wife, Linda Ketachapaw, was appointed on December 7, 2007 as his personal representative by the Kent County Probate Court. See Exhibit A to Affidavit of Douglas W. Van Essen. The Court is asked to take judicial notice of this appointment. Ms. Ketchapaw, as personal representative has engaged counsel, who is corresponding with the Sheriff's counsel, including informal discovery, regarding potential claims of Mr. Ketchapaw's Estate related to the suicide. See Affidavit of Douglas W. Van Essen, ¶4.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Where the issue is presented is one of law, it should be resolved on summary disposition. See *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir.1982).

Judicial notice of adjudicate facts decided in another case is appropriate under Rule 56 review and clearly judicial notice of court records in another matter is proper under summary judgment analysis. See *Friedman v. U.S.,* 927 F.2d 259 (6th Cir. 1991).

## STATEMENT OF QUESTION PRESENTED

**1. Do PAIMI and its regulations confer jurisdiction in MPAS where the Authorized Personal Representative of an Individual's Estate is asserting his rights regarding potential neglect claims arising out of his jail suicide?**

The answer to this legal question is, "no."

## ARGUMENT

By its own Complaint, MPAS concedes that the alleged legal basis for its jurisdiction to investigate the Ketchapaw suicide is found in 42 CFR §51.41(b), which reads:

> (b) A P & A system shall have access to the records of any of the following individuals with mental illness:

2

(1) An individual who is a client of the P & A system if authorized by that individual or the legal guardian, conservator or other legal representative.

(2) An individual, including an individual who has died or whose whereabouts is unknown, to whom all of the following conditions apply:

    (i) The individual, due to his mental or physical condition, is unable to authorized the P & A system to have access;

    **(ii) The individual does not have a legal guardian, conservator or other legal representative, or the individual's guardian is the State or one of its political subdivisions; and**

    (iii) A complaint or report has been received and the P & A system has determined that there is probable cause to believe that the individual has been or may be subject to abuse or neglect.

(3) An individual who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint or report has been received by the P&A system and with respect to whom the P & A system has determined that there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy, whenever all of the following conditions exists:

    (i) The P & A system has made a good faith effort to contact the representative upon prompt receive of the representative's name and address;

    (ii) The P & A system has made a good faith effort to offer assistance to the representative to resolve the situation; and

    (iii) The representative has failed or refused to act on behalf of the individual.

(Emphasis added).

3

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241-42 (1989). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Id.,* 489 U.S. at 241(quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)). This "plain language" or "plain meaning" rule of interpretation is not limited to the meaning of individual terms; rather, "[s]uch an inquiry requires examining the text of the statute as a whole by considering its context, 'object, and policy.' " *Harmon Indus., Inc. v. Browner,* 191 F.3d 894, 899 (8th Cir.1999). The rules of statutory construction apply to regulations, as well. *Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Kempthorne*, 497 F.3d 337, 351 (3rd Cir. 2007).

In applying the rules of statutory interpretation to PAIMI's regulations above, several conclusions are apparent. First, had Mr. Ketchapaw recovered from his self-inflicted injuries, MPAS would **not** have the authority to access his records or perform an investigation regarding his treatment without his consent under any circumstances, since there is no allegation, much less evidence, that he was subject to a guardianship or conservatorship prior to his death. If an individual does not have a guardian and is capable of providing consent, 42 CFR §51.41(b)(1) clearly requires an individual's consent before a P & A system has jurisdiction to investigate a claim regarding that individual. No interpretation of PAIMI or its regulations could conclude otherwise.

4

Second, if Mr. Ketchapaw had survived but was not capable of providing consent and had a guardian appointed for him and the guardian had not given consent, the ***only*** way in which MPAS or any other P & A system could assume the regulatory authority to access his records and investigate a potential neglect claim involving him would be if there was "probable cause to believe that [his] health or safety…were in serious and immediate jeopardy." 42 CFR §51.41(b)(3) cannot be read in any other way.

The remaining statutory question is whether under 42 CFR §51.41(b)(2) Mr. Ketchapaw's death obviates the need for the consent of his Estate, particularly where one has been created and the legal representative is actively engaged in investigating a potential claim for him? No fair interpretation of 42 CFR §51.41(b)(2) could lead to that conclusion.

First, as noted above, this regulation must be given its plain meaning and the plain meaning of 42 CFR §51.41(b)(2)—although recognizing that it applies where the mentally ill individual's whereabouts are unknown or where he is dead—disengages a P & A system's authority where there is a "legal representative." 42 CFR §51.41(b)(2)(ii):

> (2.) An individual, including an individual who has died or whose whereabouts is unknown, to whom ***all*** of the following conditions apply:
> …..
>> (ii) The individual does ***not*** have a legal guardian, conservator or other legal representative or the individual's guardian is the State or one of its political subdivisions; and…

(Emphasis Added).

5

Second, such a reading makes sense given the context of "(ii)," which is sandwiched between "(i)," which would require the individual's consent under any circumstances if he were alive and did not have a guardian, and "(iii)," which would require the consent of a guardian if the recipient is alive, unless the recipient's health or safety is in immediate peril.

Third, this reading makes sense given PAIMI's general recognition of the importance of a family member advocates [See 42 U.S.C. §10801(a)], and the practical that there is no shortage of mentally ill persons on which a P & A system may concentrate its resources, who do not have family actively engaged as advocates for their welfare.

MPAS will respond by trying to convince the Court to deny 42 CFR §51.41(b)(2)(ii) its plain meaning. Specifically, it will argue that that a "personal representative" of an Estate is not an "other legal representative" under 42 CFR §51.41(b)(2)(ii). That suggestion defies the plain meaning of 42 CFR §51.41(b)(2)(ii), the structure and context of the regulation, and ignores Michigan law.

First, it is clear that by identifying "guardian, conservator and other legal representative" in a subsection of a regulation that applies to living and dead recipients, federal authorities were intending to be inclusive, not restrictive, of all individuals cloaked with the authority to consent for another person.

Second, MPAS's interpretation defies the general deference to the individual or representatives acting on his or her behalf, as found in §51.41(b)(1) and (3). In other words, it would be illogical for federal authorities

to require Mr. Ketchapaw's approval if he were alive (Subsection 1), his legal representative's approval if he were in a coma (Subsection 3), but not require approval of a legal representative if he were missing or dead (Subsection 2).

Finally, MPAS's proffered interpretation conflicts with Michigan law, since a review of MCL §600.2936(2) demonstrates that Michigan law clearly considers "legal representative" as being synonymous with "personal representative" in an Estate.[1]

Without a statutory argument, MPAS will ask the Court to blindly follow *Office of Protective and Advocacy for Persons with Disabilities v. Armstrong,* 266 F.Supp. 2d 303 (2003), suggesting that this case stands for the proposition the consent of next of kin is not necessary. However, *Armstrong* did **not** involve a situation where the defendant had demonstrated that there was an appointed personal representative for an Estate who was investigating the incident and with whom the defendant was engaged in informal discovery, such as is true in the present case, and is, therefore, distinguishable from the present case. Moreover, *Armstrong* is not precedential to this Court, and to the extent that it

---

[1] MCL §600.2936(2) provides:

> **"Legal representative's bill of peace.** Whenever any person appointed by a probate court as the legal representative or trustee of the estate of a deceased person, a minor, or a mentally incompetent person, has possession of over $100.00-worth of the estate's real or personal property or its proceeds and has good reason to doubt his right to hold or dispose of this property because of adverse claims of title or lien of other persons or corporations, or of conflicting proceedings to administer the estate in that or another probate court, and no proceedings have been taken to test his right, by adverse claimants or otherwise, he may file a complaint in the nature of a bill of peace in the circuit court of the county in which is located the probate court which appointed him, to have adjudicated the validity of his own right and the rights of adverse claimants and the legal representatives appointed in conflicting proceedings."

7

ignores the plain meaning of the regulation and its structure and context, it should not be considered influential.

### **CONCLUSION**

As a matter of law, PAIMI and its regulations do ***not*** confer jurisdiction in MPAS where the Authorized Personal Representative of an Individual's Estate is asserting his rights regarding potential neglect claims arising out of his jail suicide. There is no genuine issue of material fact but that this is exactly the situation facing the Court, and the Complaint should be dismissed as a mater of law. Accordingly, the Defendant Ottawa County Sheriff respectfully requests that this Court grant its Motion for Summary Judgment under F.R.Civ.P. 56.

**SILVER & VAN ESSEN, P.C.**
Attorneys for Ottawa County Sheriff Gary Rosema

Date: December 8, 2008  By: /s/ Douglas W. Van Essen
_____
Douglas W. Van Essen
dwv@silvervanessen.com

**BUSINESS ADDRESS & TELEPHONE**
116 Ottawa Avenue N.W.
Grand Rapids, MI 49503
(616) 988-5600

8